UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN HUBBARD,

    Plaintiff,

-vs-

                               Case No.

EQUIFAX INFORMATION SERVICES
LLC, and NATIONAL CREDIT
SYSTEMS, INC.,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Stephen Hubbard (hereinafter "Plaintiff"), by and through his undersigned counsel, for his cause of action against Defendants, Equifax Information Services LLC (hereinafter "Equifax"); and National Credit Systems, Inc. (hereinafter "NCS") (hereinafter collectively "Defendants"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs, and attorney's fees brought pursuant to the FCRA.

1

2.     Today in America there are three major consumer reporting agencies, Equifax Information Services LLC (hereinafter "Equifax"), Trans Union LLC (hereinafter "Trans Union"), and Experian Information Solutions, Inc. (hereinafter "Experian") (hereinafter collectively "CRAs").

3.     Consumer reporting agencies that create consumer reports, like Equifax, Experian, and Trans Union, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities, particularly where a consumer makes a dispute about information reported.

4.     When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5.     The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in accuracy". Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

2

## JURISDICTION AND VENUE

6.     Jurisdiction for this Court is conferred by 28 U.S.C. § 1331, as this action involves violations of the FCRA.

7.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.     Venue is proper in this District as Plaintiff is a natural person and resident of Hillsborough County in the State of Florida; Defendants transact business within this District; and violations described in this Complaint occurred in this District.

9.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10.    Equifax is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

11.    Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12.    Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13.    NCS is a corporation with its principal place of business in the State of Georgia and is authorized to do business in the State of Florida through its registered agent, CT Corporation System located at 1200 South Pine Island Rd, Plantation, FL 33324.

14.    NCS is a "furnisher of information" as that term is used in 15 U.S.C § 1681s-2.

15.    NCS furnished information about Plaintiff to Equifax that was inaccurate.

### FACTUAL ALLEGATIONS

16.    Plaintiff lived for years in the Angel Wood Mobile Home Park. When he went to move out in June 2024, there was a dispute over rent which ended up in a case being filed in Hillsborough County Court.

17.    Ultimately an agreement was reached and Plaintiff moved out and the case involving rent determination was dismissed by an agreed order.

18.    Believing everything had been resolved per the Court case, Plaintiff was shocked when a year letter he discovered a collections account on his Equifax credit report by NCS collecting on behalf of Angel Wood Mobile Home Park.

19. Plaintiff began disputing with Equifax that the NCS account was false as the issue had been resolved in the Hillsborough County Court case, however NCS and Equifax kept verifying that the NCS collection account was accurate and would remain on his credit report, the first two such instances occurred on October 22, 205 (Equifax confirmation # 5272534189) and November 13, 2025 (Equifax confirmation # 5296551500).

20. During this time Plaintiff also reached out directly to NCS to dispute the collection account as false.

21. NCS ultimately agreed with Plaintiff that he did not owe the money and sent him written correspondence on November 18, 2025 stating that the collection account for Angel Woods Mobile Home Park had been cancelled:

> "National Credit Systems, Inc. will no longer pursue recovery of this account. We will request that any credit listing made by this agency in connection with this account be removed."

22. Again, Plaintiff assumed the issue had been resolved now that NCS admitted they would no longer report the account, however Plaintiff became concerned as time passed and the false NCS account continued to remain on his Equifax credit report.

23. Due to the continued false reporting, Plaintiff began disputing the NCS collections account with Equifax and provided Equifax copy of the NCS

letter where they state they will no longer collect the account and will delete said listing, yet incredulously, over and over Equifax and NCS continued to verify the false account and kept it on his credit report:

    i.    December 3, 2025, NCS Account Verified (Confirmation # 5318586550)

    ii.    January 28, 2026, NCS Account Verified (Confirmation # 6007546744)

    iii.    March 11, 2026, NCS Account Verified (Confirmation # 6046561703)

24. Finally on March 16, 2026, Equifax responded to one of Plaintiff's disputes by stating that NCS was not currently reporting on his credit report.

25. For a third time, Plaintiff assumed the issue had been resolved, yet somehow, beyond any explanation, when Plaintiff checked his Equifax credit report on or about April 17, 2026, he was stunned to see the NCS collection account still reporting.

26. Beyond frustrated, on or about May 5, 2026, Plaintiff sent a detailed written dispute letter via certified USPS mail to Equifax (Tracking # 9589 0710 5270 2629 2254 85). In the letter Plaintiff provided his personal information including images of his driver's license and social security card to prove his

identity. Plaintiff explained he had disputed this clearly false account an enormous number of times and spent so much time and money trying to get the problem resolved. He explained this debt was resolved and NCS itself admitted it would stop reporting and collecting, yet continues to do so. Plaintiff provided an image of the false reporting, as well as the letter from NCS stating it would stop collection and reporting of the account.

27. As of the filing of this Complaint, Plaintiff has never received a response from Equifax to this detailed dispute letter.

28. In need of housing, Plaintiff applied for an apartment with Sherwood Oaks Apartments but was ultimately denied housing on or about April 29, 2026, due to the false NCS collection account.

29. Equifax failed to do any independent investigation into Plaintiff's disputes, but rather parroted information it received from the furnisher. Equifax received all the information necessary to have determined that the NCS account should not be appearing on Plaintiff's credit report. Credit Reporting Agencies such as Equifax should be able to verify the veracity of Plaintiff's claims and that an error was being made by NCS.

30. Equifax never attempted to contact Plaintiff during the alleged investigation.

31. Upon information and belief, Equifax notified NCS of Plaintiff's dispute. However, NCS failed to conduct a reasonable investigation and merely compared its own erroneous data to that provided by Equifax in connection with the dispute investigation.

32. As of the filing of this Complaint, upon information and belief, Equifax has failed to review or conduct a reasonable investigation as to Plaintiff's disputes. The inaccurate reporting of the NCS Account continues.

33. Equifax has not conducted an actual investigation despite Plaintiff's pleas, and upon information and belief, simply continue to parrot off the back of the furnisher, NCS.

34. NCS has not conducted a reasonable investigation despite Plaintiff's numerous pleas.

35. Plaintiff continues to suffer as of the filing of this Complaint with Defendants' reluctance to conduct a thorough investigation into his disputes or otherwise make his credit file accurate. The Defendants continue to defame Plaintiff by reporting inaccurate delinquent payment behavior.

36. At any point during this process, had the Defendants conducted a reasonable investigation in response to Plaintiff's disputes, the results would have been different.

37.    Other individuals have lodged complaints similar to the Plaintiff's in this matter, including direct complaints, CFPB complaints, FTC complaints, and via lawsuits.

38.    As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

   i.    Monies lost by attempting to fix his credit. Plaintiff has suffered actual damages in postage paid, wasted ink and paper, and wasted time, Plaintiff's attempts to correct his credit file has resulted in fees and costs;

   ii.    Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Defendants' reluctance to fix the errors;

   iii.    Reduction in credit score as the Defendants failed to properly investigate the disputed information;

   iv.    Delay in applying for personal loans and lines of credit due to fear of denials from Plaintiff's lowered credit score;

   v.    Defamation as Plaintiff's information has been published to third parties including but not limited to MyFICO to calculate Plaintiff's credit score, including but not limited to Sherwood Oaks, as well as

to Root Insurance Agency on or about December 23, 2025 and February 24, 2026.

## CAUSES OF ACTION

### COUNT I
### Violation of 15 U.S.C. § 1681e(b) as to
### Defendant, Equifax Information Services LLC (Negligent)

39.    Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

40.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

41.    Equifax allowed for a Furnisher, such as NCS, to report inaccurate and erroneous account information to Plaintiff's credit file.

42.    Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

43.    Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

10

44.     Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

45.     As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

46.     The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

47.     Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual damages against Defendant, Equifax Information Services LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT II
### Violation of 15 U.S.C. § 1681e(b) as to

11

**Defendant, Equifax Information Services LLC (Willful)**

48. Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

49. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning Plaintiff.

50. Equifax allowed for a Furnisher, such as NCS, to report inaccurate and erroneous account information to Plaintiff's credit file.

51. Upon information and belief, Equifax does not allow its representatives to call consumers, like Plaintiff, during the dispute process or call witnesses with knowledge about the dispute.

52. Equifax selects to just parrot the information provided by the Furnisher and to avoid conducting re-investigations.

53. Equifax chooses the illegitimate parroting of information despite consumers (like Plaintiff) providing ample evidence.

54. As a result of this conduct, action, and inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional

distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

55.   The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

56.   Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, Equifax Information Services LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT III
### Violation of 15 U.S.C. § 1681i as to
### Defendant, Equifax Information Services LLC (Negligent)

57.   Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

58.    After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

59.    Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

60.    Plaintiff provided Equifax with the information it needed to confirm that the NCS account should not be appearing on his credit report. Equifax ignored this information and failed to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

61.    As a direct result of this conduct, action and/or inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury;

14

emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

62.    The conduct, action, and/or inaction of Equifax was negligent, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

63.    Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual damages against Defendant, Equifax Information Services LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT IV
**Violation of 15 U.S.C. § 1681i as to
Defendant, Equifax Information Services LLC (Willful)**

96.    Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

97.    After receiving Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to delete inaccurate information in Plaintiff's credit file after

15

receiving notice of such inaccuracies; (ii) failing to conduct a lawful and reasonable reinvestigation into Plaintiff's disputes; (iii) failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; (iv) failing to review and consider all relevant information submitted by Plaintiff in the disputes; and (v) relying upon verification from a source it has to know is unreliable.

98. Despite the large amount of information and documentation produced by Plaintiff demonstrating the inaccurate reporting, Equifax failed to conduct independent investigations into Plaintiff's disputes and simply transferred the duty to investigate to the furnisher.

99. Plaintiff provided Equifax with the information it needed to confirm that the NCS account should not be appearing on his credit report. Equifax ignored this information and failed to conduct a thorough investigation into his disputes or otherwise make his credit file accurate.

100. As a direct result of this conduct, action and/or inaction of Equifax, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress,

anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

101. The conduct, action, and/or inaction of Equifax was willful, rendering it liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

102. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to § 1681o.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual damages against Defendant, Equifax Information Services LLC; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## COUNT V
### Violation of 15 U.S.C. § 1681 s-2(b) as to
### Defendant, National Credit Systems, Inc. (Negligent)

103. Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

104. NCS furnished inaccurate account information to Equifax and through Equifax to all of Plaintiff's potential lenders.

105. After receiving Plaintiff's disputes, NCS violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the erroneous account information; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to Equifax; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

106. Plaintiff provided all the relevant information and documents necessary for NCS to have identified that the account should not be reporting.

107. NCS knowingly chose to follow procedures which did not review, confirm, or verify the validity of the account.

108. NCS violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax after it had been notified that the information it was furnishing was inaccurate.

109. As a direct result of this conduct, action, and/or inaction of NCS, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

110.   The conduct, action, and inaction of NCS was negligent, rendering it liable for actual damages, in an amount to be determined by the Court pursuant to 15 USC § 1681o.

111.   Plaintiff is entitled to recover costs and attorney's fees from NCS in an amount to be determined by the Court pursuant to 15 USC § 1681o.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual damages against Defendant, National Credit Systems, Inc.; jointly and severally; award Plaintiff his attorneys' fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and grant all such additional relief as the Court deems appropriate.

### <u>COUNT VI</u>
**Violation of 15 U.S.C. § 1681 s-2(b) as to**
**Defendant, National Credit Systems, Inc. (Willful)**

112.   Plaintiff re-alleges and incorporates paragraphs one (1) through thirty-eight (38) above as if fully stated herein.

113.   NCS furnished inaccurate account information to Equifax and through Equifax to all of Plaintiff's potential lenders.

114.   After receiving Plaintiff's disputes, NCS violated 15 U.S.C. § 1681s-2(b) by (i) failing to fully and properly investigate Plaintiff's dispute of the

19

erroneous account information; (ii) failing to review all relevant information regarding same; (iii) failing to accurately respond to Equifax; and (iv) failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the representations to the consumer reporting agency.

115. Plaintiff provided all the relevant information and documents necessary for NCS to have identified that the account should not be reporting on his credit report.

116. NCS knowingly chose to follow procedures which did not review, confirm, or verify the account pay status and balance were accurate.

117. NCS violated 15 U.S.C. § 1681s-2(b) by continuing to furnish inaccurate information to Equifax after it had been notified that the information it was furnishing was inaccurate.

118. As a direct result of this conduct, action, and/or inaction of NCS, Plaintiff suffered damage, including without limitation, loss of the ability to benefit from lower interest rates; loss of time; financial loss; physical injury; emotional distress; and mental and emotional pain stemming from the stress, anguish, humiliation, and apprehension in applying for credit and the damages otherwise outlined in this Complaint.

119.    The conduct, action, and inaction of NCS was willful, rendering it liable for actual or statutory damages and punitive damages, in an amount to be determined by the Court pursuant to 15 USC § 1681n.

120.    Plaintiff is entitled to recover costs and attorney's fees from NCS in an amount to be determined by the Court pursuant to 15 USC § 1681n.

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award actual or statutory damages and punitive damages against Defendant, National Credit Systems, Inc.; award Plaintiff his attorney's fees and costs; award pre-judgment and post-judgment interest at the legal rate; enjoinder from further violations of these parts; and such other such relief the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Stephen Hubbard, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendants, Equifax Information Services LLC and National Credit Systems, Inc., jointly and severally; attorneys' fees and costs; prejudgment and

post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

DATED this 2nd day of July, 2026.

Respectfully submitted,

**/s/ Octavio Gomez**
Octavio "Tav" Gomez, Esq.
Florida Bar #: 0338620
Georgia Bar #: 617963
Pennsylvania Bar #: 325066
The Consumer Lawyers PLLC
501 E. Kennedy Blvd, Suite 610
Tampa, Florida 33602
Cell: (813) 299-8537
Facsimile: (844) 951-3933
Tav@theconsumerlawyers.com

**/s/Frank H. Kerney, III.**
Frank H. Kerney, III, Esq.
Florida Bar #:88672
Tennessee Bar #: 035859
Cell: (813)951-8278
Facsimile: (844)951-3933
Primary Email:
Frank@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com
*Attorneys for Plaintiff*